[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15473
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2005
THOMAS K. KAHN
CLERK

Agency Docket Nos. A73-035-818 & A77-052-002

DE DONG LIU,
TANG FE LIU,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review from a Final Order
of the Board of Immigration Appeals

_____

(June 22, 2005)

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

De Dong Liu and Tang Fe Liu ("the petitioners"), through counsel, petition

for review of the Board of Immigration Appeals' ("BIA's") decision affirming the

immigration judge's ("IJ's") denial of their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment ("CAT"). After review, we affirm.

## I. BACKGROUND

De Dong Liu (hereinafter "De Dong"), a native and citizen of the People's Republic of China, arrived in the United States on or about August 17, 1992, but was not admitted or paroled at that time. On October 5, 1993, De Dong applied for asylum and withholding of removal, alleging past persecution on account of his political opinion. In June 1996, an asylum officer interviewed De Dong and found him ineligible for asylum, but he was not removed at that time.

Subsequently, De Dong's minor daughter, Tang Fe Liu (hereinafter "Tang Fe") arrived in the United States. Specifically, on April 15, 1999, Tang Fe, a native and citizen of the People's Republic of China, arrived at Honolulu International Airport and, presenting a counterfeit visa, applied for admission to the United States as an intended immigrant. Tang Fe was denied admission and issued a notice to appear, charging her with removability because she was likely to become a public charge and because she did not possess valid entry or travel documents.

2

On October 25, 2002, De Dong, was issued a notice to appear, charging him with removability as an alien who was present in the United States without having been admitted or paroled.[1]  De Dong's case was consolidated with Tang Fe's case. At a May 2003 hearing before the IJ, they appeared together to concede removability, and request asylum, withholding of removal, and relief under the CAT.

## A.    De Dong's 1993 Asylum Application

In his 1993 asylum application, De Dong alleged that he was married with three children born in 1981, 1984, and 1986.  According to De Dong, after the birth of his second child, his village in the Fujian Province implemented a family-planning policy, mandating that each married couple could have no more than one child.  To ensure compliance with the policy, the government forced De Dong's wife, Chun Rong, to have an intrauterine device ("IUD") implanted.  Several months after the IUD was implanted, it "dropped automatically," and Chun Rong became pregnant.  Chun Rong hid at the home of a relative in another village until she gave birth to their third child.

---

[1] Because the petitioners' removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), this case is governed by the permanent provisions of the Immigration and Nationality Act ("INA"), as amended by IIRIRA.

When the local government discovered that Chun Rong had given birth, it ordered the couple to undergo sterilization, but the couple refused and fled to another village. Subsequently, in 1992, Chun Rong became pregnant again with the couple's fourth child. When she was four months pregnant, the government forced her to have an abortion and fined the couple 5,000 yuan for violating the family-planning policy. The government further ordered that De Dong undergo sterilization, but, rather than comply with the order, he fled to the United States.

**B.      De Dong's June 1996 Asylum Interview**

In June 1996, an asylum officer interviewed De Dong regarding his 1993 asylum application. De Dong's oral testimony differed from the statements in his asylum application. During the interview, De Dong testified that his fourth child was not aborted, but was killed by a neighbor during a dispute. De Dong further testified that he feared returning to China because "he would probably fight with his neighbor and since the neighbor had boys and [he] had only girls," De Dong would lose the fight. De Dong testified that he violated the family-planning policy because he wanted boys, rather than girls.

The asylum officer concluded that De Dong's oral testimony was credible. However, the asylum officer concluded that because De Dong was punished for

4

violating a law of general applicability and was not singled out, he was ineligible for asylum.

## C. De Dong's Supplemental Statement

De Dong also submitted a supplemental statement in support of his 2003 asylum request. De Dong's supplemental statement differed from his 1993 asylum application and his 1996 oral testimony.

In his supplemental statement, De Dong alleged that he married Chun Rong in 1981, but that their marriage was not registered until March 27, 1992. De Dong also alleged that he had three children, born January 1, 1982, November 6, 1984, and January 20, 1986. According to De Dong, on January 10, 1985, the government forced Chun Rong to have an IUD inserted and fined the couple 5,000 yuan, which they paid on January 15, 1985. When "the IUD dropped for unknown reasons," Chun Rong became pregnant and gave birth to their third child at the home of a relative.

In 1987, when the government learned of the birth of the couple's third child, the government examined Chun Rong and discovered she was eight months pregnant. On October 15, 1987, the government forced Chun Rong to have an abortion and to undergo sterilization. The government also fined the couple 10,000 yuan for giving birth to their third child, but because they were not able to

pay the fine, the government refused to allow the couple to register their marriage or add their third child to the family register. Ultimately, De Dong grew "tired of the government's harassment and persecution" and fled to the United States.

## D. Documents and Exhibits in Support of Asylum

The petitioners submitted several documents and exhibits in support of their asylum request, including: (1) a doctor's note confirming that Chun Rong had an IUD implanted on January 10; (2) a doctor's note confirming that Chun Rong had an abortion on October 15, 1987; and (3) a doctor's note confirming that Chun Rong was sterilized on October 16, 1987.

The record also contained the 2002 Country Report on Human Rights Practices for China (hereinafter "Country Report") discussing China's strict birth-control policies. Additionally, the record contained the China Country Assessment for October 2002 ("Country Assessment"), which was prepared by the United Kingdom's Country Information and Policy Unit, Immigration and Nationality Directorate, Home Office. The Country Assessment stated that many asylum seekers, particularly those from the Fujian Province, enlist the services of people-smugglers to provide them with fraudulent documents, including abortion and sterilization certificates, with which they can obtain asylum.

## E. De Dong's 2003 Asylum Hearing

As the 2003 asylum hearing, De Dong's testimony differed slightly from the testimony and evidence he previously submitted. At the hearing, De Dong testified that he was married with three children, and he first came to the United States on July 17, 1992 because he had violated China's family-planning policy. De Dong again alleged that the government forced his wife to have an IUD implanted, abort their fourth child, and undergo sterilization. De Dong explained that the couple wanted to have a fourth child because they only had one son, and they needed another boy to work in their field.

With regard to the abortion, De Dong testified that local authorities forced their way into his house on October 15, 1987, arrested his wife, took her to a hospital and forced her to have an abortion and undergo sterilization.

De Dong further testified that his first two children were registered in the "household registration book," but his third child was not registered until October 27, 1992. De Dong testified that he did not register his marriage until 1992 because his village did not require it.

The IJ then asked De Dong why his original asylum application, filed in 1993, specified a different date for his wife's alleged abortion, 1992 instead of 1987. De Dong responded that a travel agency had completed the application for him, and he had no knowledge of what they had written. De Dong further testified

that, when he went for his original asylum interview in 1996, he did not understand the asylum officer's questions because the interpreter provided for him spoke Mandarin, but De Dong spoke only Foo Chow. He claimed that he paid the travel agency $600 to prepare his asylum application and assist him with the interview. De Dong stated that he wanted to remain in the country so that he could take care of his children and they could continue to attend school in the United States.

## F.     Decisions of the IJ and BIA

The IJ denied asylum, withholding of removal, and CAT relief to De Dong and Tang Fe, and ordered them removed to China. The IJ found that De Dong's testimony was not credible because: (1) he testified that his wife was sterilized in 1987, but in his asylum application he claimed that his wife became pregnant in 1992; (2) he told the asylum officer that his fourth child was killed in a dispute with a neighbor and that he wanted sons who could protect him; (3) he was physically shaking during the hearing, especially when questioned about the inconsistencies between his testimony and application; (4) it was apparent that he had memorized his story so as not to make any mistakes; and (5) the Country Assessment stated that the family-planning policy was enforced leniently in the Fujian Province. The only portion of De Dong's testimony that the IJ found

credible was his claim that he wanted to remain in the United States so that his daughter could continue to attend school here.

The IJ also took judicial notice of the fact that certain travel agencies provide "stories" to aliens seeking asylum, concluding that De Dong likely was provided with the "story" contained in his original asylum application. After determining that the story De Dong told to the asylum officer during his interview in 1996 was the correct one, the IJ found that De Dong's current claim was frivolous. The IJ determined that the petitioners were not eligible for asylum, withholding of removal, or CAT relief.

The petitioners appealed the IJ's decision to the BIA, which affirmed the IJ's decision and dismissed petitioners' appeal. The BIA affirmed the IJ's adverse credibility finding, determining that De Dong failed to provide a convincing explanation for the discrepancies in his 1993 asylum application, his statements during his 1996 asylum interview, and his 2003 hearing testimony. However, the BIA rejected the IJ's determination that De Dong's application was frivolous. The petitioners timely appealed to this Court.

## II. DISCUSSION

On appeal, the petitioners argue that the BIA erred by finding that De Dong's testimony was not credible and that his explanation for the discrepancies in his three different stories was not convincing.

Where, as here, the BIA issues its own opinion and does not expressly adopt the IJ's reasoning, we review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). The BIA's factual determinations are reviewed under "the highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the [BIA]'s decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc), cert. denied, – U.S. –, 2005 WL 1131208 (U.S. May 16, 2005). We "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (citation omitted).

The BIA's credibility determinations are also reviewed under the substantial evidence test. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). The BIA must provide "specific, cogent reasons" for its adverse credibility finding, and those reasons must be supported by substantial evidence. Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

The Attorney General has discretion to grant asylum if an alien meets the

INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . . For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

In this case, the BIA provided specific, cogent reasons in support of its adverse credibility finding, and those reasons are supported by substantial evidence in the record. Specifically, the BIA's adverse credibility finding was

11

based on discrepancies in the stories contained in De Dong's 1993 asylum application, in his 1996 asylum interview, and in his 2003 hearing testimony. In light of these conflicting stories, substantial evidence supports the BIA's adverse credibility finding. See Forgue, 401 F.3d at 1287. Moreover, in light of the evidence that asylum-seekers from the Fujian Province are often provided with falsified documents and concocted stories, it was reasonable for the BIA to reject De Dong's explanation for his inconsistent stories.

Finally, substantial evidence supported the BIA's determination that petitioners failed to meet their burden of proof for asylum relief.[2] First, as mentioned above, the BIA found that De Dong was not credible based on the inconsistent statements provided in his 1993 asylum application, 1996 asylum interview, and 2003 asylum hearing. Second, as the Country Assessment stated, people-smugglers frequently provided concocted stories and falsified documents, including abortion and sterilization certificates, to asylum seekers. Because the documents submitted by the petitioners are the exact types of documents that are frequently fabricated, their probative value is significantly limited. Accordingly,

---

[2]Tang Fe's asylum claim is based on De Dong's asylum claim.

substantial evidence supported the BIA's determination that the petitioners were not eligible for asylum relief.[3]

### III. CONCLUSION

For the foregoing reasons, we deny the petition for review.

**PETITION DENIED.**

---

[3]Because petitioners have failed to demonstrate asylum eligibility, they have failed to meet the more exacting standards for demonstrating entitlement to withholding of removal or CAT relief. See Al Najjar, 257 F.3d at 1292-93, 1303.